**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**MEKALE DUCKSWORTH**                                                 **PLAINTIFF**

**v.**                                         **CIVIL ACTION NO. 2:20-CV-114-KS-MTP**

**THE CITY OF LAUREL, MISSISSIPPI,** *et al.*                **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [21]. Specifically, the Court rules as follows:

- The Court **grants** the motion as to the § 1983 excessive force claims against Defendants Hedgepeth, Windsor, and Landrum in their individual capacities;

- the Court **denies** the motion as to the § 1983 excessive force claim against Defendant Welch in his individual capacity;

- the Court **denies** the motion as to Plaintiff's § 1983 false arrest claim against the individual Defendants in their individual capacities;

- the Court **grants** the motion as to Plaintiff's equal protection claims;

- the Court **grants** the motion as to Plaintiff's racial discrimination claims;

- the Court **grants** the motion as to Plaintiff's § 1985 claims;

- the Court **grants** the motion as to Plaintiff's § 1983 claims against the City of Laurel;

- the Court **grants** the motion as to Plaintiff's § 1983 failure to train/supervise claims;

- the Court **denies** the motion as to Plaintiff's § 1983 due process claim arising from Defendant Landrum's alleged fabrication of evidence as asserted against Landrum in his individual capacity, but **grants** it as to any similar claim against the other Defendants;

- the Court **grants** the motion as to Plaintiff's § 1983 First Amendment claims;

- the Court **grants** the motion as to Plaintiff's punitive damage claims.

## I. BACKGROUND[1]

This is an excessive force case arising from an incident at a car wash in Laurel, Mississippi. Defendants Justin Landrum, Clint Hedgepeth, Josh Welch, and John Windsor – officers of the Laurel Police Department – responded to a call about an unruly customer at the business. Defendants believed that the unruly customer was an individual with open warrants named Kenny Rogers Jr.

When Defendants arrived, the attendant on duty told them that Plaintiff had pulled his truck into a vacuum bay before paying for a car wash, and that he became belligerent when she told him that he had to pay for a car wash first. But she also told Defendants that Plaintiff apologized before they arrived. When Defendants asked her if she wanted Plaintiff to leave, she responded, "As long as he stays out there and he does what he's doing now, he's fine. But like I told him, there was no need in him doing all that . . . ." Defendants decided to go talk to Plaintiff and "find

---

[1] The Court examined and considered all the evidence presented by the parties, but its account of the factual background relies heavily on the officers' body camera videos and the transcript of Plaintiff's municipal court trial. *See* Exhibits C [21-3] and E [21-5].

out what his problem is."

One of the officers asked Plaintiff to exit his truck. When he exited the truck, Defendants knew he was not Rogers, the individual with open warrants. Plaintiff explained what happened, said he apologized to the car wash employee, and accused Defendants of harassing him. One of the officers told Plaintiff, "Get in your vehicle, leave, and don't come back." Plaintiff responded, "I'm gonna vacuum my truck out first. I paid for my service," refusing to leave. The officers continued to tell him to leave, and he refused.

Defendant Landrum[2] took a step toward Plaintiff, and Plaintiff said, "Don't put your hands on me, bro. Don't put your hands on me." One of the officers in the background asked, "What you gonna do?" At the same time, Landrum immediately drew his tazer and ordered Plaintiff to turn around and place his hands behind his head. Plaintiff refused and said, "I'm gonna get in my truck and leave, man." Landrum continued to order Plaintiff to put his hands behind his back, and Plaintiff asked, "What's your name, man?" Landrum then shot Plaintiff with the tazer, and Defendants Hedgepeth and Windsor[3] moved in and started trying to wrestle Plaintiff to the ground. Defendant Welch[4] said, "Tazer! Tazer!" as he moved in and used his tazer on Plaintiff. Welch continued to taze Plaintiff as he fell to the ground, and

___

[2] Welch testified in Plaintiff's criminal trial that the officer who initially pulled his tazer and ordered Plaintiff to put his hands behind his back was Landrum. Exhibit E [21-5], at 12.
[3] Windsor testified in Plaintiff's criminal trial that he and Hedgepeth took Plaintiff down to the ground after Landrum initially fired his tazer. *Id.* at 36.
[4] Windsor testified in Plaintiff's criminal trial that Welch was the second officer to use his tazer on Plaintiff. *Id.*

Hedgepeth and Windsor put cuffs on him.

As Hedgepeth and Windsor cuffed Plaintiff, Welch kept his tazer pressed to Plaintiff's back. One of the officers exclaimed, "When we tell you to do something, you do it! I don't care who you think you are!" Plaintiff responded, "I'm just trying to speak up for myself. There's too much going on here." The same officer replied, "When we tell you to leave, that's what you have to do!" As Defendants continued to secure Plaintiff, he told them that his children were in the truck,[5] asked to see them, and said Defendants' actions were unnecessary. One of the officers responded, "All you gotta do is what we ask." Plaintiff said, "I can't finish my services?" One of the Defendants yelled, "When you bow up to the police, that's what happens!"

Defendants arrested Plaintiff. The City charged him with failure to comply with an officer's order or direction, and a municipal judge found Plaintiff not guilty. Plaintiff filed this lawsuit against the individual officers and the City of Laurel, asserting a variety of claims under 42 U.S.C. § 1983 and state law. Defendant filed a Motion for Summary Judgment [21], which the Court now addresses.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where

---

[5] Plaintiff's children – two young boys, both under five years old – were in the truck throughout these events and witnessed everything. Their crying is audible in the body camera video.

the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

#### A.   *Excessive Force*

Defendants argue that Plaintiff cannot prevail on his excessive force claim. "To prevail on a Section 1983 excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and

(3) the excessiveness of which was clearly unreasonable." *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019).

> Though some injuries are so minor that they are insufficient to satisfy the injury element as a matter of law, an injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible – that is, objectively unreasonable under the circumstances. The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible. Specifically, the court should consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). The inquiry is "confined to whether the officer was in danger at the moment of the threat that resulted in the" use of force. *Shepherd*, 920 F.3d at 283. "Therefore, any of the officers' actions leading up to the [use of force] are not relevant." *Id.*

Before the Court addresses the evidence, it must determine which use of force is the basis of Plaintiff's excessive force claims. Neither Plaintiff nor Defendants have provided individualized analyses of each Defendant's actions. However, based on Plaintiff's Complaint[6] and brief,[7] the Court assumes that Defendants' use of a tazer forms the basis of Plaintiff's excessive force claims.

### 1.    Hedgepeth and Windsor

From the outset, the Court notes that, based on the body camera videos, it is indisputable that neither Defendant Hedgepeth nor Defendant Windsor used a tazer.

---

[6] Exhibit A [1-2], at 14-25.
[7] Response [26], at 9-10.

Exhibit C [21-3]. Therefore, the Court grants Defendants' Motion for Summary Judgment [21] as to the excessive force claims against Defendants Hedgepeth and Windsor in their individual capacities.[8]

### 2. *Landrum*

Next, Defendant Landrum used his tazer but it appears to be undisputed that it did not work because one of the barbs did not make contact with Plaintiff's skin. *See* Exhibit C [21-3]; Exhibit E [21-5], at 43. The injury which forms the basis of an excessive force claim "must be more than *de minimis*." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). But "the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). "*Any* force found to be objectively unreasonable necessarily exceeds the *de minimis*, threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* "[A]s long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.*

The record contains no evidence that Landrum's ineffective use of a tazer caused Plaintiff to suffer an injury. The video of the incident indisputably shows that

---

[8] Hedgepeth and Windsor physically restrained Plaintiff and cuffed him, but it does not appear that Plaintiff intended for these actions to form the basis of an excessive force claim. Plaintiff's briefing and the cases cited therein focus on the use of a tazer. Therefore, the Court assumes that Plaintiff did not intend to assert an excessive force claim against Defendants Hedgepeth and Windsor based on their use of physical force to restrain and cuff him. Again, Plaintiff did not clearly articulate the basis of the excessive force claim as to each individual Defendant, and it is not the Court's job to make Plaintiff's arguments for him.

Landrum's tazer did not hurt or harm Plaintiff. Exhibit C [21-3]. Indeed, after Landrum fired the tazer, Plaintiff immediately turned to get in his truck and leave. *Id.* Plaintiff has not presented evidence or even argued that Landrum's use of a tazer caused mental or psychological injuries. Therefore, the Court concludes that Landrum's ineffective use of a tazer can not form the basis of an excessive force claim. *See Welsh v. Correct Care Recovery Solutions*, 845 F. App'x 311, 318 (5th Cir. 2021) (where plaintiff suffered no injury, he had no viable excessive force claim); *Staten v. Adams*, 615 F. App'x 223, 224 (5th Cir. 2015) (where plaintiff did not contest evidence that he suffered no injury consistent with use of excessive force, summary judgment was appropriate).

    *3.*    *Welch*

As for Defendant Welch's use of a tazer, Defendants first argue that the evidence demonstrates that the officers' use of force was not clearly excessive to the need or objectively unreasonable. Specifically, Defendants contend that the officers were justified in using force because 1) Plaintiff refused to leave the premises when the officers ordered him to do so, 2) Plaintiff refused to obey Defendant Landrum's command to place his hands on top of his head, 3) Plaintiff attempted to enter his vehicle, and 4) Plaintiff continued to struggle with Defendants Hedgepeth and Windsor after they seized him.

First, Defendants have not cited any law granting them authority to order Plaintiff to leave the premises of a private business when he was not causing a

disturbance and the business's representative had said that he could stay. Similarly, Defendants have not demonstrated that they had any authority to arrest Landrum just because he did not comply with their unlawful command to leave. "One has an undoubted right to resist an unlawful arrest . . . ." *United States v. Di Re*, 332 U.S. 581, 594, 68 S. Ct. 222, 92 L. Ed. 210 (1948); *see also Taylor v. State*, 396 So. 2d 39, 42 (Miss. 1981) ("A person has the right to use reasonable force to resist an unlawful arrest.").

Additionally, Plaintiff's brief turn toward the truck after Landrum initially tried to taze him cannot justify Welch's later use of a tazer. The events were separated by several seconds. By the time Welch used his tazer, Defendants Windsor and Hedgepeth had already intervened by seizing Plaintiff.

Plaintiff's resistance of Windsor and Hedgepeth's attempt to cuff him is the only possible justification for Welch's use of a tazer. However, after careful consideration of the evidence, the Court concludes that a reasonable jury could find that it was clearly excessive and unreasonable under the circumstances. First, a reasonable jury could conclude, after viewing the body camera video, that Windsor and Hedgepeth had Plaintiff under reasonable control at the time that Welch used the tazer, and, therefore, he posed no threat to the safety of the officers or others. Second, a reasonable jury could conclude that Plaintiff was entitled to resist the arrest because it was unlawful. *Di Re*, 332 U.S. at 594; *Taylor*, 396 So. 2d at 42.

4.     *Qualified Immunity*

Defendants also argue that Defendant Welch is entitled to qualified immunity from liability against Plaintiff's excessive force claim. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "Although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

There are two steps in the Court's analysis. First, the Court determines whether the defendant's "conduct violates an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Id.* The Court may address either step first. *Pearson*, 555 U.S. at 236.

In excessive force cases, officers are generally entitled to qualified immunity "even when [they] act negligently, or when they could have used another method to subdue a suspect, or when they created the dangerous situation, or when the law governing their behavior in particular circumstances is unclear." *Mason v. Paul*, 929 F.3d 762, 763 (5th Cir. 2019). Moreover, courts are not permitted to "hold officers liable from the safety of our 20/20 vision of hindsight for decisions taken in a split-

second under potentially life-threatening conditions." *Id.* Rather, the Court "applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).

"[W]hat matters is what the defendant . . . knew when" he used force. *Cole v. Carson*, 935 F.3d 444, 456 (5th Cir. 2019). The Court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "Although officers may need to use physical force to effectuate a suspect's compliance when he refuses to comply with commands . . . , the officers still must assess the relationship between the need and the amount of force used." *Newman v. Guidry*, 703 F.3d 757, 763 (5th Cir. 2012). For example, the Fifth Circuit has held that a jury could reasonably find that the use of force was objectively unreasonable when "officers immediately resorted to taser and nightstick without attempting to use physical skill, negotiation, or even commands." *Id.* (punctuation and internal citations omitted); *see also Deville*, 567 F.3d at 167-68.

First, Defendants argue that Welch did not violate any of Plaintiff's clearly established constitutional rights. "[T]he right to be free from excessive force during a

seizure is clearly established." *Poole*, 691 F.3d at 627; *see also Newman*, 703 F.3d at 763; *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). As explained above, there is a genuine dispute of material fact as to whether Defendant Welch used excessive force.

Next, Defendants argue that Welch's conduct was objectively reasonable under the circumstances. For the same reasons provided in the Court's discussion of the elements of an excessive force claim under § 1983, the Court finds that there is a genuine dispute of material fact as to whether Welch's use of a tazer was objectively reasonable under the circumstances.

     5.   *Injury*

Defendants also argue that Plaintiff's excessive force claim fails because he admitted that he suffered no injuries. Although the injury which forms the basis of an excessive force claim "must be more than *de minimis*," *Hanks*, 853 F.3d at 744, "as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Alexander*, 854 F.3d at 309. The body camera video depicts Plaintiff screaming in pain as Welch tazed him. In the Court's opinion, that creates a genuine dispute of material fact as to whether Plaintiff suffered an injury.

**B.**    ***False Arrest/Imprisonment***

Defendants argue that Plaintiff's claims of false arrest and/or imprisonment fail because the officers had probable cause to arrest Plaintiff. To prevail on a § 1983 claim for false arrest or imprisonment, Plaintiff must prove that Defendants did not

have probable cause to arrest him. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004). "Probable cause is established by facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019).

"When considering what a reasonable person would have concluded, we take into account the expertise and experience of the law enforcement officials." *United States v. Nunez-Sanchez*, 478 F.3d 663, 667 (5th Cir. 2007). It doesn't matter whether the offense is a felony or a misdemeanor, or whether the offense was committed in the officer's presence. *Sam v. Richard*, 887 F.3d 710, 715 n. 6 (5th Cir. 2018). Likewise, it doesn't matter if the arrestee was ever charged or convicted of the crime for which the officer arrests him. *Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015). Rather, "to make out a Fourth Amendment claim under either a 'false arrest' or 'illegal detention' theory, the relevant actors must not be aware of facts constituting probable cause to arrest or detain the person for *any* crime." *Id.*

First, Defendants argue that they had probable cause to arrest Plaintiff because he refused to follow their command to leave the premises. However, as noted above, Defendants have not cited any law granting them authority to order Plaintiff to leave the premises of a private business when he was not causing a disturbance and the business's representative had said that he could stay.

13

Next, Defendants argue that they had probable cause to arrest Plaintiff because he resisted arrest. Under Mississippi law, "[t]he offense of resisting arrest presupposes a lawful arrest." *Taylor*, 396 So. 2d at 42 (quoting *Smith v. State*, 208 So. 2d 746, 747 (Miss. 1968)). "A person has the right to use reasonable force to resist an unlawful arrest." *Id.* Here, Defendant has not demonstrated that the arrest was lawful. As noted above, they have not demonstrated that they had any authority to order Plaintiff to leave the premises of a private business when he was not causing a disturbance, breaking the law, or otherwise breaching the peace, and the business's representative had said he was free to stay. Accordingly, a reasonable jury could conclude that Plaintiff was within his rights to refuse to comply with the officers' initial order to leave the premises. Moreover, Plaintiff did not become physically combative until after Defendants first used force on him. Therefore, the Court finds that there is a genuine dispute of material fact as to whether Defendants had probable cause to arrest Plaintiff.

Defendants also argue that they arrested Plaintiff in good faith, and that if they believed the arrest was constitutional, Plaintiff has no viable claim of false arrest. Defendants have not, however, cited any current qualified immunity case law in support of this argument. As Judge Reeves has noted, *Pierson v. Ray*, 386 U.S. 547, 556, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967), is one of several cases marking the birth of the doctrine of qualified immunity. *Jamison v. McClendon*, 476 F. Supp. 3d 386, 402-03 (S.D. Miss. 2020). The doctrine has evolved over time, though. *Id.* at 402-09.

14

As noted above, the relevant questions under current case law are whether the defendant's "conduct violates an actual constitutional right," and "whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Brumfield*, 551 F.3d at 326; *see also Jamison*, 476 F. Supp. 3d at 409 (quoting *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017)).

To the extent Defendants argue that they are protected by qualified immunity, the Court finds that 1) the right to be free from false arrest without probable cause is clearly established, *see, e.g. Adelman v. Branch*, 784 F. App'x 261, 265-66 (5th Cir. 2019); 2) for all the reasons provided above, there is a genuine dispute of material fact as to whether Defendants had probable cause to arrest Plaintiff; and 3) for all the reasons provided above, there is a genuine dispute of material fact as to whether Defendants' actions were objectively reasonable under the circumstances.

## C.  *Equal Protection*

Defendants argue that Plaintiff does not have sufficient evidence to support his equal protection claims. Plaintiff did not respond to this argument in briefing or direct the Court to any evidence in support of his equal protection claims. Therefore, the Court assumes that Plaintiff has abandoned any equal protection claims he may have asserted and grants Defendants' motion in that respect.

## D.  *Racial Discrimination*

Defendants argue that Plaintiff's claims of racial discrimination fail because

there is no evidence that the officers' actions were motivated by Plaintiff's race. Plaintiff did not respond to this argument in briefing or direct the Court to any evidence in support of his racial discrimination claims. Therefore, the Court assumes that Plaintiff has abandoned any racial discrimination claims he may have asserted and grants Defendants' motion in that respect.

### E.  *42 U.S.C. § 1985*

Defendants argue that Plaintiff does not have sufficient evidence to support any claim asserted under 42 U.S.C. § 1985. Plaintiff did not respond to this argument in briefing or direct the Court to any evidence in support of a § 1985 claim. Therefore, the Court assumes that Plaintiff has abandoned any § 1985 claims he may have asserted and grants Defendants' motion in that respect.

### F.  *Municipal Liability*

Defendants argue that Plaintiff does not have sufficient evidence to meet the requirements for municipal liability under § 1983. Plaintiff did not respond to this argument in briefing or direct the Court to any evidence to support a claim of municipal liability under § 1983. Therefore, the Court assumes that Plaintiff has abandoned any § 1983 claim against the City of Laurel that he may have asserted and grants Defendants' motion in that respect.

### G.  *Failure to Train/Supervise*

Defendants argue that Plaintiff does not have sufficient evidence to establish a § 1983 claim for failure to train or supervise against the City of Laurel. Plaintiff did

not respond to this argument in briefing or direct the Court to any evidence to support a claim of failure to train or supervise under § 1983. Therefore, the Court assumes that Plaintiff has abandoned any such claim and grants Defendants' motion in that respect.

### H. *Fabrication/Misrepresentation of Evidence*

Next, Defendants argue that there is insufficient evidence to support Plaintiff's claim that Defendant Landrum fabricated evidence to secure a charge against him. There is a "due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Morgan v. Chapman*, 969 F.3d 238, 250 (5th Cir. 2020) (citing *Cole*, 802 F.3d at 771).

The record contains evidence that Defendant Landrum submitted an affidavit in which he claimed that Plaintiff "did unlawfully and willfully refuse to comply with the commands of Officer Justin Landrum . . . by failing to leave the business when asked to do so at Rainforest Car Wash . . . ." Exhibit D [21-4]. Landrum then admitted at Plaintiff's trial that the affidavit was inaccurate, and that he had not, in fact, commanded Plaintiff to leave the premises. Exhibit E [21-5], at 46-47, 50.

Defendant Landrum also submitted an Offense/Incident Report and a Use of Force Report in which he stated that the car wash's attendant told the officers that Plaintiff "refused to leave the car wash . . . ." Exhibit B [21-2], at 3, 11. At Plaintiff's trial, Landrum admitted that any statements from his reports that Plaintiff "refused to leave the car wash when the staff asked him to leave" were inaccurate. Exhibit E

[21-5], at 50. He likewise admitted that the attendant said Plaintiff could stay "if he behaves like he is doing now." *Id.* at 51.

This evidence creates a genuine dispute of material fact as to whether Defendant Landrum fabricated evidence to secure a charge against Plaintiff. The Court denies Defendants' Motion for Summary Judgment [21] as to that claim against Defendant Landrum in his individual capacity. Based on Plaintiff's briefing, it does not appear that he intended to assert this claim against any of the other Defendants, but to the extent he did intend to do so, he has not briefed such claims or directed the Court to any evidence in support of them. Also, to the extent he intended to assert it against the City, the Court has already granted Defendants' motion as to all § 1983 claims against the City.

## I.   *First Amendment*

Next, Defendants argue that the Court should grant summary judgment as to his First Amendment claim because Plaintiff has no evidence that his speech was a motivating factor for the arrest. Plaintiff contends that Defendants violated his First Amendment right to resist and protest an unlawful arrest.

"The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016). Accordingly, verbal – even profane – protests of unlawful orders from law enforcement officials may be protected by the First Amendment. *Freeman*, 483 F.3d at 414; *Voss v. Goode*, 954 F.3d 234, 240

18

(5th Cir. 2020).

> To prevail on a § 1983 claim for First Amendment retaliation, [a plaintiff] must show that (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct.

*McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017).

Plaintiff has not directed the Court to any evidence that Defendants' actions were motivated by his speech. Rather, Plaintiff summarily declared in briefing that Defendants had no intention of arresting him until he protested their actions, without directing the Court to any specific evidence. It is not the Court's responsibility to sift through the evidence on Plaintiff's behalf. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). In the absence of any evidence that Defendants were motivated by Plaintiff's speech, the Court grants their Motion for Summary Judgment [21] as to Plaintiff's First Amendment claim.

## J.   *Punitive Damages*

Finally, Defendants argue that Plaintiff's claims for punitive damages under state law are barred by Mississippi Tort Claims Act, but Plaintiff has not asserted any claims under state law.

Defendants also argue that Plaintiff's claims for punitive damages against the City are barred. Plaintiff did not respond to this argument in briefing. Therefore, the Court assumes that Plaintiff has abandoned any claim for punitive damages against the City that he may have asserted and grants Defendants' motion in that respect.

The Court also notes that Plaintiff apparently abandoned his claims against the City, removing the possibility of recovering any damages from it.

## IV. CONCLUSION

For the reasons below, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [21]. Specifically, the Court rules as follows:

- The Court **grants** the motion as to the § 1983 excessive force claims against Defendants Hedgepeth, Windsor, and Landrum in their individual capacities;

- the Court **denies** the motion as to the § 1983 excessive force claim against Defendant Welch in his individual capacity;

- the Court **denies** the motion as to Plaintiff's § 1983 false arrest claim against the individual Defendants in their individual capacities;

- the Court **grants** the motion as to Plaintiff's equal protection claims;

- the Court **grants** the motion as to Plaintiff's racial discrimination claims;

- the Court **grants** the motion as to Plaintiff's § 1985 claims;

- the Court **grants** the motion as to Plaintiff's § 1983 claims against the City of Laurel;

- the Court **grants** the motion as to Plaintiff's § 1983 failure to train/supervise claims;

- the Court **denies** the motion as to Plaintiff's § 1983 due process claim arising from Defendant Landrum's alleged fabrication of evidence as asserted against Landrum in his individual capacity, but **grants** it as to any similar claim against the other Defendants;

- the Court **grants** the motion as to Plaintiff's § 1983 First Amendment claims;

- the Court **grants** the motion as to Plaintiff's punitive damage claims.

SO ORDERED AND ADJUDGED this 1st day of October, 2021.

/s/  Keith Starrett
_____

KEITH STARRETT

UNITED STATES DISTRICT JUDGE
